IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENITO WILFREDO JUAREZ VILLAGREZ, <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI; *et al.*, <br><br> Respondents. | NO. 3:26-CV-72 |

# ORDER

The habeas corpus petition before the Court raises an issue of statutory interpretation: does the mandatory detention provision of 8 U.S.C. § 1225(b)(2) apply to aliens who have been residing in the country for some period of time?  On careful review, the Court finds that it doesn't, and therefore grants the writ.

Over the last several months, many courts have engaged in an interpretation of Section 1225(b)(2), and the majority view that has developed is that this statute only applies to essentially aliens who are detained at the border, not those, like Petitioner here, who have been residing in the country for some time.  *See, e.g.*, *Calzado Diaz v. Noem*, No. 3:25-CV-00458, 2025 WL 3628480, at *1 (W.D. Pa. Dec. 15, 2025) (Haines, J.).

The minority of courts to consider the issue have concluded that the statute isn't so narrow.  The most persuasive explanation of this view is in the Fifth Circuit's opinion in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

Though the Court agrees with aspects of the Fifth Circuit's analysis and the Court finds both competing constructions are reasonable interpretations of a poorly

worded statute,[1] what ultimately tips the scale in favor of Petitioner's view is the structure of the statute as explained in *dicta* from the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and the canon of constitutional avoidance.  *See Clark v. Martinez*, 543 U.S. 371, 380–82 (2005); *Ndiaye v. Jamison*, No. CV 25-6007, 2025 WL 3229307, at *7 (E.D. Pa. Nov. 19, 2025) (applying *Clark* to the same habeas issue as here).

To begin with, the Supreme Court's discussion of Section 1225(b)(2) in *Jennings* favors Petitioner and the majority view.  In *Jennings*, the Court acknowledged that aliens detained under Section 1225(b)(2) are subject to mandatory detention.  583 U.S. at 287–88.  Then, separately, the Court discussed the detention proceeding for a different group of aliens—those "once inside the United States." *Id.* at 288.  As the Court noted, "Section 1226 generally governs the process of arresting and detaining *that* group of aliens." *Id.* (emphasis added) (cleaned up).  The differences between Section 1225(b)(2) and Section 1226 weren't central to the Court's holding in *Jennings*, so the Court's discussion is undisputedly *dicta*.  But *dicta* from the Supreme Court still matters.  "The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket." *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000).  Lower courts should generally follow Supreme Court *dicta* "almost as firmly as the Courts' outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) (cleaned up).

---

[1] The divergent interpretations of the statute are due to the patchwork manner in which the Immigration and Nationality Act has been cobbled together. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 227 (BIA 2025) ("Ultimately, this issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues.  The INA is a complex set of legal provisions created at different times and modified over a series of years.").

The canon of constitutional avoidance too favors Petitioner and the majority view.  It's an open question whether the government may detain longstanding alien residents, accused of no other crimes (apart from the alleged underlying immigration violation), and deny them a bond hearing without violating the Due Process Clause.  The Court has serious doubts that that passes constitutional muster.  *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

To be clear, the government may subject certain aliens to mandatory detention at first without offending due-process principles, like criminal aliens detained under Section 1226(c).  *See Demore v. Kim*, 538 U.S. 510, 531 (2003).  In part, that's because the Supreme Court in *Demore* found that: (1) criminal aliens were likely to commit further offenses upon release on bond; (2) criminal aliens posed unique flight risks that would frustrate deportation efforts; and (3) removal proceedings were generally completed after a short period of time, typically after one month's detention.  *See id.* at 518–20, 529.  Even given these concerns, due process still requires that criminal aliens subject to mandatory detention under Section 1226(c) receive a bond hearing after detention becomes unreasonably long.  *See German Santos v. Warden Pike Cnty. Corr. Facility,* 965 F.3d 203, 212 (3d Cir. 2020).  So it's not as much about "if," but "when" all detainees become entitled to a bond hearing.  What interests would compel an indefinite delay of a bond hearing at the outset of detention for aliens like Petitioner?  It's not clear.  None of the factors from *Denmore* appear to apply to aliens like Petitioner; so mandatory detention with no immediate bond hearing may very well offend due process.

But the Court can, through application of the canon, avoid the constitutional concern.  Both sides present plausible readings of the statutory text. When "choosing

between competing plausible interpretations of a statutory text, [a court may rest] on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark*, 543 U.S. at 381. Interpreting Section 1225(b)(2) to not apply to aliens already present in the country, and accused of no other crimes, avoids serious constitutional questions related to due process. The Court avoids those questions by adopting Petitioner's and the majority's view.[2]

*****

For these reasons, the **WRIT SHALL ISSUE**, on these terms:

  1. Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within **30 days** of this order, or else release Petitioner by such date.

  2. Respondents shall ensure that such a hearing include the required due process, *i.e.*, at a minimum, factfinding based on a record produced before the decisionmaker and disclosed to Petitioner; an opportunity to make arguments on the Petitioner's behalf; and the right to an individualized determination of Petitioner's interests. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

  3. Petitioner shall be responsible for securing the necessary transcripts and record of the bond hearing.

The Court further finds that Respondents' position was substantially justified in this case, so no fees shall be awarded.

The Clerk of Court shall administratively close this case.

DATED this 26th day of February, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan<br>
United States District Judge

---

[2] Another alternative to avoid the constitutional issue would be to write into Section 1225(b)(2) some implied time limit to hold a bond hearing. But the Supreme Court has rejected that solution. *See Jennings*, 583 U.S. at 286.